# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KEVIN LUCEY, | Case No.: 2:07-cv-00658-RLH-RJJ |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Preliminary Injunction–#3; Motion to Dismiss and Motion for More Definite Statement–#25) |
| THE STATE OF NEVADA ex rel. BOARD OF REGENTS OF THE NEVADA SYSTEM OF HIGHER EDUCATION, on behalf of the UNIVERSITY OF NEVADA, LAS VEGAS, et al., | |
| Defendants. | |

Before the Court is Plaintiff Kevin Lucey's **Motion for Preliminary Injunction** (#3), filed May 22, 2007. The Court has also considered Defendants the State of Nevada ex rel. Board of Regents of the Nevada System of Higher Education, on behalf of the University of Nevada, Las Vegas ("UNLV" or "University"), Rebecca Mills, individually and as Vice President for Student Life, Richard Clark, individually and as Director of Student Conduct and Residential Life, and Phillip Burns', individually and as Senior Student Conduct Officer, Opposition (#23), filed September 4, 2007, and Plaintiffs' Reply (#27), filed September 17, 2007.

Also before the Court is Defendants' **Motion to Dismiss and Motion for More Definite Statement** (#25), filed September 10, 2007. The Court has also considered Plaintiff's Opposition (#28), filed September 24, 2007, and Defendants' Reply (#29), filed October 8, 2007.

## BACKGROUND

The instant litigation arises from the alleged violation of Plaintiff's constitutional rights after being charged with two violations of the UNLV's Student Conduct Code ("Conduct Code"). Plaintiff enrolled as a freshman at UNLV for the Fall 2006 semester where he resided in campus housing. In September 2006 and early October 2006, Plaintiff alleges to have witnessed his campus roommate lighting fires in their dorm room. Plaintiff informed dormitory staff of the behavior, told them that his roommate might be mentally disturbed, and requested a room change. Plaintiff's request was denied.

**I. First Incident**

Plaintiffs alleges that on October 9, 2006, his roommate, without provocation, attacked Plaintiff with a glass bottle, causing him to be treated for head injuries. Upon discharge from the hospital, campus police informed Plaintiff that he was not permitted to return to his dorm and that he was being investigated for criminal acts and violations of the Conduct Code. Plaintiff thereafter attended an Informal Resolution meeting with Defendant Burns, Senior Student Conduct Officer, on October 11, 2006. Plaintiff alleges that he was never provided an accounting or letter advising him of the results of the Informal Resolution process or any offer for a formal hearing on possible charges. Plaintiff thereafter returned to the residence hall on November 2, 2006.

On December 4, 2006, Plaintiff received a telephone call from Burns inquiring if Plaintiff would be attending the formal hearing scheduled that day in one hour. Plaintiff thereafter checked his dormitory mailbox where he found a letter from Burns dated November 16, 2006, providing notice of the formal hearing. On December 8, 2006, Plaintiff and his parents met with Defendant Clark, Director of Student Conduct and Residential Life, who Plaintiff claims led him to believe that the allegations against him were dismissed. Plaintiff alleges that Clark apologized

to him for the manner in which he was treated and for the misinformation surrounding the incident.  Clark also sent a letter to Plaintiff's parents that read in part, "I also apologize that this has been such a frustrating experience and hope that [Plaintiff]'s future experiences at UNLV are more enjoyable."

Clark thereafter sent Plaintiff a letter dated December 12, 2006, which stated that a formal hearing panel found him to be in violation of the Conduct Code and that his sanction shall be disciplinary probation, to write a reflection paper, a "no contact" order, the completion of a psychological intake assessment, and to complete an unspecified number of hours of community service.  Plaintiff alleges that he did not receive the December 12, 2006 letter until January 10, 2007, which was mailed to his parents' home.  Plaintiff further alleges that he never received any written findings and recommendation for sanctions from the Vice President for Student Life, Defendant Mills, as prescribed in the Conduct Code.

Based on his not having been provided with notice of the allegations against him, notice of the formal hearing, notice of the result of the formal hearing, or written findings and recommended sanctions, Plaintiff requested an appeal on January 18, 2007.  By letter dated February 21, 2007, Burns acknowledged timely receipt of Plaintiff's letter but denied his request for an appeal.  A hold was thereafter placed on his transcripts until he fulfilled the disciplinary sanctions imposed on him.

**II.  Second Incident**

Also in the February 21, 2007 letter, Burns mentioned a visit with Plaintiff wherein Plaintiff allegedly agreed to accept responsibility for an alcohol violation that occurred on December 5, 2006.  Plaintiff denies any such acceptance and alleges that the hold on his transcripts was placed without any hearing on this charge.

Plaintiff thereafter filed the instant action on May 21, 2007.  Shortly thereafter on June 8, 2007, Burns sent Plaintiff a letter informing him that a formal disciplinary hearing had been scheduled by Defendants for July 9, 2007, charging Plaintiff with the same misconduct for

3

which he was initially found responsible in October 2006 (the "First Incident"), along with the allegations of the alcohol violation that purportedly occurred on December 5, 2006 (the "Second Incident"). No details of this hearing are alleged in the Amended Complaint.

As a result of the foregoing, Plaintiff alleges that Defendants have wrongfully placed a hold on Plaintiff's transcripts and notated his records with the allegations of wrongdoing. For this, Plaintiff asserts claims for violations of his constitutional rights, breach of contract, negligence, intentional and negligent infliction of emotional distress, retaliation, injunctive and declaratory relief, and harassment. Plaintiff seeks a preliminary injunction to remove both the hold on his transcripts and the disciplinary notations. Defendants move to dismiss on all claims except harassment and retaliation, on which they move for a more definite statement.

For the following reasons, the Court finds that Plaintiff's Amended Complaint states a § 1983 claim arising only out of the Second Incident. It further finds that Plaintiff has stated a claim upon which relief can be granted for breach of contract but dismisses with leave to amend Plaintiff's claims for negligence, and intentional and negligent infliction of emotional distress. The Court further finds that Plaintiff is not entitled to declaratory relief and that the University is immune from any injunctive or monetary damages the Court may impose. And last, the Court denies Plaintiff's Motion for Preliminary Injunction.

**DISCUSSION**

**I. Motion to Dismiss Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Yamaguchi v. U.S. Dep't. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997) (citation omitted). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Dismissal is

1  appropriate "only if it is clear that no relief could be granted under any set of facts that could be
2  proven consistent with the allegations." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th
3  Cir. 1988) (citation omitted).

**II.  42 U.S.C. § 1983: Fourteenth Amendment**

Plaintiff seeks to hold Defendants Mills, Burns, and Clark personally liable for monetary damages arising from violations of his constitutional rights. Defendants claim qualified immunity. To the extent Defendants seek immunity for injunctive relief, the Court discusses the issue below. *See* discussion *infra* Section V.A.

The doctrine of qualified immunity is an affirmative defense that protects public officials from personal liability when performing discretionary functions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officials are shielded by qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*; *accord Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 973 (9th Cir. 1996). A court looks to whether "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity requires a two-part analysis. First, whether the officer's conduct violated a constitutional right; and second, whether at the time of the violation, the constitutional right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, Defendants contend that Plaintiff has not sufficiently alleged a violation of a protected right. The Court disagrees, finding that Plaintiff has a clearly established, protected interest in ensuring that disciplinary sanction notes and holds on his transcripts are not placed on his academic record without due process of law.

A student is entitled to procedural due process protections of the Fourteenth Amendment if he is deprived of either a liberty or property interest. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 82 (1978). Plaintiff asserts that the hold placed on his transcripts and the disciplinary sanctions noted on his file, allegedly placed without due process, deprive him

of the opportunity to obtain an education and further his career. (Am. Compl. ¶ 37.) Courts have recognized that improper disciplinary proceedings constitute a violation of a student's liberty interest, explaining that "a mark on one's record . . . may well preclude further study at any public and many private institutions and limit the positions one can qualify for after termination of one's studies." *Marin v. Univ. of P.R.*, 377 F. Supp. 613, 622 (D.P.R. 1974); *see also Goss v. Lopez*, 419 U.S. 565, 575–76 (1975). Disciplinary actions can seriously damage a student's reputation among fellow students and teachers, rendering due process essential.

Having found that a constitutional right exists, the Court must next determine whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 US. at 201. In making this determination, a court considers "the specific context of the case, not as a broad general proposition." *Id.* Specifically, a right is clearly established if "a reasonable official would understand that what he is doing violates that right." *Id.* The Court finds that reasonable officials in the Defendants' positions would know that denying a student notice of a disciplinary hearing and an opportunity to be heard could hinder a student's future education and employment opportunities and damage his reputation. Thus, the right is clearly established.

While Defendants' argument for dismissal ends there, "[o]nce it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

**A. Sufficiency of Due Process**

Due process requires both notice and an opportunity to be heard. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). When a school disciplines a student for nonacademic reasons, the student "must be given some kind of notice and afforded some kind of hearing." *Goss*, 419 U.S. at 579. Due process does not require that the notice and hearing attendant to suspension of a college student resemble a "full-dress" civil or criminal trial. *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir. 1961). There are no hard and fast rules by which to measure meaningful notice. *Nash v. Auburn*, 812 F.2d 655, 660 (11th Cir. 1987). To determine

the sort of notice and hearing to which a student is entitled, a court should balance the "student's interest in avoiding unfair or mistaken exclusion from the educational process against the school's interest in maintaining discipline." *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1248 (E.D. Mich. 1984), *aff'd* 787 F.2d 590 (6th Cir. 1986) (citing *Goss*, 419 U.S. at 579–80). "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it occurred." *Goss*, 419 U.S. at 582 (citations omitted).

### 1. The First Incident

The Court finds that Plaintiff's Amended Complaint asserts no violation of his procedural due process rights arising from the incident involving the fight with his roommate. Plaintiff argues that he was entitled to adequate advance notice of the charges, a full and expedited hearing, and a written decision by the presiding official of the findings of fact and reasons for the official's conclusion. For support, Plaintiff relies on a district court case wherein two students were suspended for more than one year for various violations of school's conduct regulations. *Marin v. Univ. of P.R.*, 377 F. Supp. 613, 616–619 (D.P.R. 1974). The *Marin* case is easily distinguishable in that the students in *Marin* were expelled for one year whereas Plaintiff was merely sanctioned to perform community service, write a reflection letter, complete a psychological intake assessment, and was placed on disciplinary probation. No allegations are asserted that Plaintiff was suspended or precluded from attending class, only that he was precluded from re-entering his dorm room for a short period of time following the physical altercation.

The Court finds that the level of due process required for a year-long suspension is greater than that required for disciplinary probation. The University's granting of both an informal and formal hearing, including the denial of Plaintiff's appeal, adequately satisfied Plaintiff's procedural due process rights prior to being placed on disciplinary probation. Plaintiff makes no allegation that he was prejudiced in any way by the alleged short notice given to him regarding the formal hearing or that he was unable to be fully heard at either hearing. *Compare Goss*, 419 U.S. at 582 ("There need be no delay between the time 'notice' is given and the time of the hearing.")

AO 72
(Rev. 8/82)

1   *with Keough v. Tate County Bd. of Educ.*, 748 F.2d 1077, 1083 (5th Cir. 1984) (a plaintiff must
2   have been substantially prejudiced from the insufficient notice to establish an infringement of his
3   due process right to notice).  Rather, the allegations show that Plaintiff was granted two
4   opportunities to persuade the University that he was not in violation of the Conduct Code and
5   merely denied a third opportunity.  Such satisfies due process.  *Goss*, 419 U.S. at 581 ("We hold
6   only that, in being given an opportunity to explain his version of the facts at this discussion, the
7   student first be told what he is accused of doing and what the basis of the accusation is.").
8           Accordingly, Plaintiff's Amended Complaint fails to allege a constitutional
9   violation arising out of the First Incident.

   **2. Second Incident**

11          Plaintiff's allegations regarding the Second Incident state that Burns notified
12  Plaintiff by letter that Plaintiff assumed responsibility for an alcohol violation.  Plaintiff further
13  alleges that not only did he not accept responsibility, but that no hearing of any kind was provided
14  prior to a hold being placed on his transcripts for the violation.  Because the hold and disciplinary
15  remarks on his transcript are alleged to have occurred without any notice or opportunity to be
16  heard, the Court finds that Plaintiff has sufficiently alleged a procedural due process violation.
17          Regarding the cause of Plaintiff's alleged constitutional injury, the Court finds that
18  Plaintiff has sufficiently alleged that his due process violation arose from a *de facto* policy of
19  Defendants.  A local governmental entity may be liable under § 1983 when "action pursuant to
20  official . . . policy of some nature causes a constitutional tort."  *Monell v. Dep't of Soc. Servs.*, 436
21  U.S. 658, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  Moreover, liability can
22  attach if a policy of inaction exists and such inaction amounts to a failure to protect constitutional
23  rights.  *Canton*, 489 U.S. at 388.
24          To impose liability for a failure to act, a § 1983 plaintiff must allege that: (1) he
25  possessed a constitutional right of which he was deprived; (2) the entity had a policy; (3) the policy
26  "amounts to deliberate indifference" of the plaintiff's constitutional right; and (4) the policy is the

"moving force behind the constitutional violation." *Id.* at 388–89. Here, Plaintiff alleges that the Defendants knew for a substantial period of time that their due process policies and procedures were being ignored, and that despite Defendants' knowledge, no steps were taken to comply with them, thereby causing his constitutional deprivation. The Court finds these allegation sufficient to assert the existence of a *de facto* policy.

And last, Defendants argue that Plaintiff has failed to assert personal participation on behalf of the individual Defendants. The Court finds that Plaintiff makes no distinction between the Defendants who allegedly created the *de facto* policy and thus does not dismiss any Defendants based on lack of personal participation in Plaintiff's alleged constitutional deprivations.

Because Plaintiff's federal claim survives, the Court exercises supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367.

**III. State Law Claims**

    **A. Breach of Contract**

Plaintiff alleges that the Conduct Code, the Nevada System of Higher Education ("NSHE") Handbook, and the UNLV Student Handbook create a contractual relationship obligating the University to follow its established procedures. Defendants move to dismiss on the grounds that Plaintiff has failed to allege the existence of any mutual agreement as to whether the Parties intended for these documents to constitute a binding contract. Specifically, Defendants conclude that because Plaintiff failed to allege that the Parties intended to contract and that promise were exchanged, his claim for breach of contract fails.

In light of Fed. R. Civ. P. 8(a), the Court finds that Plaintiff's Amended Complaint sufficiently alleges a breach of contract claim. Rule 8(a) imposes a liberal pleading standard intended only to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Here, Plaintiff alleges that a contract was formed with Defendants arising from the rights guaranteed to him in the Conduct Code and the

AO 72
(Rev. 8/82)

Handbooks, that Defendants breached the contract, and that Plaintiff was damaged. (Am. Compl. ¶¶ 48–50.) Defendants are on sufficient notice of the allegations on which Plaintiff rests his breach of contract claim and the Court does not dismiss it.

### B. Negligence

Under Nevada law, the elements for a negligence claim are duty, breach, causation, and damages. *Wiley v. Redd*, 885 P.2d 592, 595 (1994). Plaintiff generally asserts, without citation to legal authority, that a university owes a duty of care to each of their students who paid tuition and that Defendants breached that duty by refusing to treat Plaintiff with fundamental fairness and afford him due process as promised in the Student Code. The Court rejects the argument that a university owes a general duty of care. *Johnson v. State*, 894 P.2d 1366, 1368 (Wash. App. Ct. 1995) (universities owe no general duty of care to their students). Further, Plaintiff fails to plead or argue the existence of a special relationship, and thus the Court dismisses Plaintiff's negligence claim. The Court notes that Defendants do not move for dismissal on Plaintiff's claim for negligent hiring, training and supervision.

### C. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must prove: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation." *Olivero v. Lowe*, 995 P.2d 1023, 1025 (Nev. 2000). Defendants contend that their conduct was not extreme or outrageous, and the Court agrees. Failing to provide notice and a hearing to a university student before placing a hold on his academic transcripts and noting his file with the disciplinary charges does not rise to the level of conduct that is "outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998). Plaintiff's claim for intentional infliction of emotional distress is dismissed.

/ /

AO 72
(Rev. 8/82)

### D. Negligent Infliction of Emotional Distress

The tort of negligent infliction of emotional distress historically compensated a bystander for suffering serious emotional distress resulting in physical symptoms caused by apprehending the death or serious injury of a loved one due to a defendant's negligence. *Chowdhry v. NLVH*, 851 P.2d 459, 462 (Nev. 1993). Nevada has extended this tort where the defendant committed the negligent act directly against the plaintiff. *Id.* Where the plaintiff's emotional distress damages "are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented." *Oliver*o, 995 P.2d at 1026.

Plaintiff's Amended Complaint contains no allegations asserting that his severe emotional distress manifested into physical injury or illness. Plaintiff alleges only that his mental distress has caused him "serious psychological injury, loss of community reputation, medical expenses, and to incur severe financial obligations in order to retain attorneys." (Am. Compl. ¶ 62.) Accordingly, this claim is dismissed.

### E. Declaratory Relief

In addition to monetary and injunctive relief, Plaintiff seeks declaratory relief. This remedy is unavailable because other adequate remedies are available to redress past conduct. *See Harara v. Conoco Philips Co.*, 377 F. Supp. 2d 779, 796 n.21 (N.D. Cal. 2005). Moreover, court may decline to hear a claim for declaratory relief if adjudication of the issues raised in other claims would fully and adequately determine all matters actually in controversy between the parties. *See Taggart v. Rantz*, No. CV 06-17-GF-SEH, 2006 WL 3387284, at *4 (D. Mont. Nov. 21, 2006).

In the instant case, injunctive and monetary damages are available to fully redress all of Plaintiff's claims for relief and thus the Court dismisses Plaintiff's claim for declaratory relief.

//

AO 72
(Rev. 8/82)

**IV. Motion for More Definite Statement**

Defendants request more definite pleading on Plaintiff's claims for harassment and retaliation. Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Such a statement must simply "give the defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). However, Fed. R. Civ. P. 12(b)(e) provides that a party who is required to respond to a pleading may ask the court to order the pleader to submit a more definite statement on the grounds that the pleading in question is "so vague or ambiguous that the [responding] party cannot reasonably prepare a response." Motions made under Rule 12(e) are disfavored and rarely granted because of the minimal pleading requirements of the Federal Rules. *Sagan v. Apple Computer, Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994) (citation omitted). A Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made. *Id.*

Defendants argue that Plaintiff has not afforded fair notice regarding the law on which his harassment and retaliation claims are based. Defendants note that claims for retaliation may be based on federal law, such as Title VII, or can arise in accordance with state laws prohibiting retaliation in the employment context. Plaintiff responds by citing to an inapplicable trespass case, *Parkinson v. Winniman*, 344 P.2d 677 (Nev. 1959). However, it appears that Plaintiff is asserting a common law harassment and retaliation tort claim against Defendants, as Title VII or employment discrimination have no application to the instant litigation. The Court finds the claims sufficiently pled. Whether Nevada law recognizes such claims is not before the Court. Accordingly, Defendants' Motion for More Definite Statement is denied.

/ /

/ /

/ /

AO 72
(Rev. 8/82)

**V. Motion for Preliminary Injunction**

    **A. Eleventh Amendment Immunity**

Prior to turning to the merits of the request for preliminary injunction, the Court discusses the Parties' dispute over whether the University may be enjoined from any action ordered by the Court. The Court finds that the University has properly asserted its Eleventh Amendment immunity.

The Eleventh Amendment bars suits against states and state agencies, whether the action is for damages or injunctive relief. *Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 56 (1996). The State of Nevada has explicitly refused to waive its immunity to suit under the Eleventh Amendment. Nev. Rev. Stat. § 41.031(1). The Eleventh Amendment protection from suit extends to state instrumentalities and agencies. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (citations omitted). The Nevada university system is an instrumentality of the state within the meaning of the Eleventh Amendment. *Meza v. Lee*, 669 F. Supp. 325, 328 (D. Nev. 1987); *Johnson v. Univ. of Nev.*, 596 F. Supp. 175, 178 (D. Nev. 1984). The *Johnson* court stated that "because the [u]niversity system operates as a branch of the Nevada State government and because it is obligated to provide sufficient funds for its operation, [University of Nevada-Reno] and the Board [of Regents of the Nevada System of Higher Education] are state instrumentalities within the meaning of the Eleventh Amendment." *Johnson*, 596 F. Supp. at 178.

Moreover, it appears undisputed that injunctive relief may be imposed against the individual Defendants sued in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (citations omitted).

    **B. Injunctive Relief Standard**

To prevail in a request for preliminary injunctive relief, a moving party must meet one of two tests. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) (citation omitted).

1   The first test requires the moving party to show that: (1) he will suffer irreparable injury if the
2   injunction is not granted; (2) he will likely prevail on the merits; (3) the State will not be harmed
3   by the injunction more than he is helped by it; (4) and granting the injunction is in the public
4   interest. *Id*. Under the second test, the moving party must show "*either* a combination of probable
5   success on the merits and the possibility of irreparable injury or that serious questions are raised
6   and the balance of hardship tips sharply in his favor." *Id*. (emphasis in original). Concerning the
7   balance of hardships, even if the balance tips in favor of the moving party, a fair chance of success
8   on the merits must nevertheless be shown. *Id*. The two alternative tests "represent two points on a
9   sliding scale in which the required degree of irreparable harm increases as the probability of
10  success decreases. They are not separate tests but rather outer reaches of a single continuum."
11  *Baby Tam Co. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir. 1998).

### 1. Likelihood of Success on the Merits

#### (a). Due Process Claim

While the Court found that Plaintiff sufficiently alleged a claim for deprivations of his procedural due process rights arising from the Second Incident, the Court finds that the evidence submitted, both in support and in opposition of the pending Motion for Preliminary Injunction, paints a different picture of Plaintiff's claim. While Plaintiff alleges in his Amended Complaint that the University and its official unilaterally and arbitrarily charged him with an alcohol violation, the factual record indicates that such is not the case.

Affidavit and documentary evidence submitted by Defendants reveal that prior to being charged with the infraction, Plaintiff was both notified and given the opportunity to discuss the charges. Defendants first submit a letter dated December 11, 2006, written by Nannette Jimenez ("Jimenez") on behalf of the Office of Student Conduct. The letter is addressed to Plaintiff and describes three Conduct Code violations that Plaintiff reportedly violated. By affidavit, Jimenez testifies that on the same day, she personally met with Plaintiff regarding the charges. She further affirms that Plaintiff openly admitted to having alcohol paraphernalia in his

1  dorm room consisting of a box for a 12-pack of Bud Light in the trash can and three empty beer
2  cans.  Plaintiff explained that the beer was not consumed the night of the alleged infraction,
3  December 5, 2006, and thus he claimed that he was not in violation of the alcohol policy.  No
4  violation was charged that day.
5    Rather, at the time Plaintiff personally met with Jimenez, Jimenez was not yet in
6  receipt of the UNLV Department of Public Safety report and asked Plaintiff if they could wait to
7  sign off on an Informal Resolution until such report was received.  Plaintiff allegedly agreed.  The
8  following day, December 12, 2006, the Office of Student Conduct contacted Plaintiff to let him
9  know they received the report and to schedule a meeting.  A meeting was thereafter scheduled on
10 December 14, 2006, on which date Plaintiff failed to appear.  The record is unclear who scheduled
11 the meeting and how or when it was communicated to Plaintiff.
12   The next event relating to the alcohol violation occurred on January 18, 2007.  On
13 this date, Plaintiff's attorney contacted the Office of Student Conduct to state that he was
14 representing Plaintiff concerning the allegations made against him involving both the First and
15 Second Incidents and to assert that Plaintiff denied all allegations stemming from the Second
16 Incident.  He also requested an appeal of the findings.  The fact that Plaintiff's attorney was aware
17 of the alcohol violation discredits any argument by Plaintiff that he was not previously notified of
18 the charge.
19   Also on January 23, 2007, Plaintiff was notified that he missed the December 14,
20 2006 hearing and to contact Jimenez no later than February 6, 2007, and that a hold may be placed
21 on his transcript until the issues are resolved.  Plaintiff never contacted Jimenez to reschedule and
22 does not deny receipt of the letter.
23   Thereafter, Plaintiff's counsel again contacted the Office of Student Conduct on
24 February 15, 2007, requesting a followup of his January 18, 2007 letter.  Burns replied on February
25 21, 2007, and explained that in relation to the First Incident, the notification procedures were
26 followed, that the hearing panel findings were mailed to Plaintiff, and that he would need to

AO 72
(Rev. 8/82)

1   complete the sanctions for the hold to be lifted.  With regard to the Second Incident, Burns

2   explained that Plaintiff met with Jimenez regarding the violation and thereafter failed to attend the

3   follow-up meeting, and that Plaintiff failed to reschedule with Jimenez as instructed by her in the

4   January 23, 2007 letter.

5   　　　　　　The Court finds that the submitted evidence does not demonstrate a likelihood of

6   success on the merits of Plaintiff's constitutional claim.  First, Plaintiff's allegation that he was

7   charged with the alcohol violation without any notice or hearing of any kind is directly refuted by

8   Defendants' evidence that Jimenez personally met with Plaintiff and discussed the infraction and

9   by Plaintiff's counsel's knowledge of the infraction, thereby indicating that he was given both

10  notice and an opportunity to be heard.  Second, even if true that Plaintiff never met with Jimenez

11  or admitted to possessing alcohol paraphernalia, Plaintiff does not dispute that he received the

12  January 23, 2007 letter providing notice that a hold may be placed on his transcripts and that he

13  should contact Jimenez no later than February 6, 2007.  Thus, any failure of an opportunity to be

14  heard appears to be of Plaintiff's own making.

15  　　　　　　In any event, Plaintiff was afforded a formal hearing on both the First and Second

16  Incidents on July 9, 2007.  While the hearing may not have cured any past constitutional violations

17  that may have occurred (an issue not decided in this Order), the hearing does appear to have

18  provided due process relating to the continuation of the academic hold on Plaintiff's transcripts,

19  thereby eliminating his entitlement to injunctive relief.

20  　　　　　　Further, Plaintiff asserts for the first time in Reply that Defendants' denial of

21  Plaintiff's right to counsel at the July 9, 2007 hearing violated his due process rights.  The Court

22  disagrees and finds that facts do not indicate that Plaintiff had a right to counsel since there is no

23  evidence that he was unable to fairly represent himself.  *Wasson v. Trowbridge*, 382 F.2d 807, 812

24  (2d Cir. 1967) (student does not have right to be represented by counsel at an expulsion hearing

25  "where the individual concerned is mature and educated, where his knowledge of the events . . .

26  enable him to develop the facts adequately through available sources, and where the other aspects

AO 72
(Rev. 8/82)

of the hearing taken as a whole are fair."). Moreover, Plaintiff presents no evidence that criminal charges were contemplated. *See Gabrilowitz v. Newman*, 582 F.2d 100, 106 (1st Cir. 1978) (because "[t]he consequences of this plaintiff's participation in what otherwise might be strictly a University affair, reaches well beyond the University walls in terms of potential effect upon this plaintiff.").

Accordingly, the Court finds that Plaintiff has not shown that he is likely to succeed on the merits of his constitutional claim.

### (b). Breach of Contract Claim

The Court further finds that Plaintiff has not shown a likelihood of success on his breach of contract claim. Assuming Plaintiff succeeds in proving the formation of a contract, a court's review under a breach of contract theory for violations of a university's established disciplinary procedures is limited to whether the procedures used were arbitrary, capricious, and in bad faith. *See Holert v. Univ. of Chicago*, 751 F. Supp. 1294, 1301 (N.D. Ill. 1990). The *Holert* court explained that a disciplinary committee's decision is arbitrary and capricious only if it is without any discernable rational basis. *Id.* Such a deferential standard is applied because of courts' "reluctance to interfere with the academic affairs and regulation of student conduct." *Id.* (citing *Tinkoff v. Northwestern Univ.*, 77 N.E.2d 345, 349 (1st Dist. 1947)).

The Court is inclined to take a deferential review of a university's disciplinary procedures, as other courts have done. *See e.g.*, *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1997) (because the student-university relationship is unique, contract law need not be rigidly applied) (citing *Slaughter v. Brigham Young Univ.*, 514 F.2d 622, 626 (10th Cir. 1975); *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988) ("absent evidence of a constitutionally impermissible basis for a challenged academic decision . . . courts and juries must be extremely reluctant to second guess the professional judgment of the academic decision makers . . . [o]nly when challenged decision is arbitrary and capricious, and without rational basis, may it be set aside upon judicial review"); *Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 150 (D. Mass. 1997)

AO 72
(Rev. 8/82)

("courts should be slow to intrude into the sensitive area of the student-college relationship, especially in areas of curriculum and discipline.") (citation omitted).

In reviewing the allegations and evidence submitted, the Court finds that Plaintiff is unlikely to succeed in proving that the University's disciplinary procedures were arbitrary, capricious, or unfair. As discussed in the due process analysis, the disciplinary procedures imposed by the University appeared to give Plaintiff multiple opportunities to present to the University his version of events. Regarding the First Incident, the University afforded Plaintiff both an informal and formal hearing and Plaintiff makes no allegation or argument that the University based its decision on a lack of full knowledge or information. Accordingly, the procedure does not appear to be arbitrary, capricious or unfair.

Regarding the Second Incident, it appears Plaintiff either personally met with Jimenez or failed to take advantage of the opportunity to do. Thus, the University's decision to sanction Plaintiff for violating the alcohol policy–-whether based on Plaintiff's alleged admission or his failure to schedule a meeting–-does not, from the record, appear arbitrary, capricious or unfair. Thus, the Court finds that Plaintiff has failed to show a likelihood of success on his breach of contract claim.

**2. Balance of Hardships and Irreparable Harm**

The Court recognizes in balancing the hardships that Plaintiff has an interest in ensuring that allegations of wrongdoing and academic holds are not improperly placed on his records or transcripts. While Plaintiff argues that the transcript hold may preclude him from transferring to another academic institution, Plaintiff submits no evidence of either a desire or attempt to transfer. Defendants have an interest in ensuring that student conduct violations are dealt with to promote education for the individuals involved and other members of the campus community.

In weighing these interests in light of Plaintiff's unlikelihood of success on the merits, the Court finds that the balance of hardships tips in favor of Defendants. To grant the

AO 72
(Rev. 8/82)

1  injunction would mean the Court is substituting its own judgment for that of the University's
2  decision-makers.  Further, it does not appear from the record that Plaintiff is precluded, in the
3  interim, from continuing his education at UNLV.  Thus, any irreparable injury is minimized.

### 3. Public Interest

A court must examine the public interest in determining the appropriateness of a preliminary injunction. *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002). Plaintiff discusses the public interest requirement for the first time in Reply, asserting that the public has an interest in ensuring the integrity of the rules and regulations put in place will be followed. While the Court does not disagree that other University students involved in the

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

AO 72
(Rev. 8/82)

disciplinary process have an interest in ensuing that they are given fair disciplinary procedures, the University community at-large has an interest in ensuring that students who violate the Conduct Code are not excused from disciplinary sanctions imposed upon them.

For the foregoing reasons, the Court denies Plaintiff's Motion for Preliminary Injunction.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction (#3) is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (#25) is GRANTED in part and DENIED in part as follows:

- GRANTED as to Plaintiff's § 1983 claim as it relates to the physical altercation. Plaintiff does not have leave to amend.
- GRANTED as to Plaintiff's state law claims for negligence and intentional and negligent infliction of emotional distress. Plaintiff is granted leave to amend.
- DENIED as to Plaintiff's § 1983 claim as it relates to the alcohol violation, and on Plaintiff's state law breach of contract claims. .

IT IS FURTHER ORDERED that Defendants' Motion for More Definite Statement (#25) is DENIED.

Dated:  December 17, 2007.

_____
**ROGER L. HUNT**
**Chief United States District Judge**

AO 72
(Rev. 8/82)