UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KEVIN LUCEY, ) | Case No.: 2:07-cv-00658-RLH-RJJ |
| ) | |
| Plaintiff, ) | **O R D E R** |
| ) | |
| vs. ) | (Motion for Summary Judgment–#51) |
| ) | |
| THE STATE OF NEVADA *ex rel.* BOARD OF ) | |
| REGENTS OF THE NEVADA SYSTEM OF ) | |
| HIGHER EDUCATION, on behalf of the ) | |
| UNIVERSITY OF NEVADA, LAS VEGAS, *et* ) | |
| *al.*, ) | |
| ) | |
| Defendants. ) | |

Before the Court is a **Motion for Summary Judgment** (#51), filed December 8, 2008, by Defendants the State of Nevada *ex rel.* Board of Regents of the Nevada System of Higher Education, on behalf of the University of Nevada, Las Vegas ("UNLV" or "University"), Rebecca Mills, individually and as Vice President for Student Life, Richard Clark, individually and as Director of Student Conduct and Residential Life, and Phillip Burns, individually and as Senior Student Conduct Officer. The Court has also considered Plaintiff Kevin Lucey's Opposition (#54), filed January 6, 2009, and Defendants' Reply (#57), filed February 2, 2009.

/

1

AO 72
(Rev. 8/82)

**BACKGROUND**

This case arises from the alleged violation of Plaintiff's constitutional rights after he was charged with two violations of UNLV's Student Conduct Code ("Conduct Code"). Plaintiff enrolled as a freshman at UNLV in the Fall 2006 semester and resided in on-campus housing.

**I.     First Incident**

Plaintiff alleges that on October 9, 2006, his roommate, without provocation, attacked him with a glass bottle, requiring him to be treated for head injuries. Upon discharge from the hospital, campus police informed Plaintiff that he could not return to his dorm and that he was being investigated for criminal acts and violations of the Conduct Code ("First Incident"). On October 11, 2007, Plaintiff attended an Informal Resolution meeting with Defendant Phillip Burns, a Senior Student Conduct Officer. Plaintiff alleges he was never informed of the results of this Informal Resolution meeting. Plaintiff returned to the residence hall on November 2, 2006.

On December 4, 2006, Burns called Plaintiff and asked if he would be attending the formal hearing scheduled to begin in one hour. Plaintiff then checked his dormitory mailbox where he found a letter from Burns dated November 16, 2006, providing notice of the formal hearing. On December 8, 2006, Plaintiff and his parents met with Defendant Clark, Director of Student Conduct and Residential Life, who Plaintiff claims led him to believe that the allegations against him had been dismissed. On December 12, 2006, Clark sent Plaintiff a letter stating that a formal hearing panel found him to be in violation of the Conduct Code and that the panel imposed sanctions, requiring Plaintiff to write a reflection paper, to submit to a "no contact" order, to complete a psychological intake assessment, and to complete an unspecified number of hours of community service. Plaintiff claims he did not receive the December 12, 2006, letter until January 10, 2007, when it arrived at his parents' home.

Alleging that he was not given adequate notice of the charges against him, of the formal hearing, or of the written findings and sanctions, Plaintiff requested an appeal on January

18, 2007. By letter dated February 21, 2007, Burns acknowledged timely receipt of Plaintiff's letter but denied his request for an appeal. A hold was thereafter placed on Plaintiff's transcripts until he fulfilled the disciplinary requirements imposed on him.

**II.     Second Incident**

On December 5, 2006, the UNLV Police knocked on Plaintiff's door when he was in his dorm room with some friends. The police were responding to a report that the scent of marijuana was coming from the floor where Plaintiff resided. Plaintiff gave the police permission to enter his apartment, and he admitted that there were empty beer cans in the garbage.

On December 8, Richard Clark informed Plaintiff and his parents of new allegations arising out of the events of December 5, 2006 ("Second Incident"). Mr. Clark claims he informed Plaintiff that Nannette Jimenez from the Office of Student Conduct needed to meet with him to discuss the Second Incident. On December 11, 2006, Ms. Jimenez sent Plaintiff a letter informing him that he needed to contact the Office of Student Conduct as soon as possible. This letter also informed Plaintiff that a hold could be placed on his transcript pending resolution of the matter and that failure to appear or make alternative arrangements could result in negative consequences.

Ms. Jimenez testifies that she also met with Plaintiff on December 11, 2006. According to Defendants, Plaintiff admitted to having alcohol in his room on December 5, but claimed that the alcohol was old and had not been consumed that night. Ms. Jimenez explained to Plaintiff that he had violated the controlled substance abuse policy and was subject to sanctions. Although Plaintiff denied having violated this policy, the two agreed to wait until the UNLV Department of Public Safety issued a report based on the events of December 5, 2006, before taking further action.

On December 12, the Office of Student Conduct contacted Plaintiff to let him know they received the report and wanted to schedule a meeting. The meeting was scheduled for December 14, though the record does not indicate who scheduled it. Plaintiff did not show up for

the meeting. Defendants allege Plaintiff knew of the meeting but chose not to attend because he did not plan on returning to UNLV for the next semester. According to Defendants, Ms. Jimenez sent Plaintiff a letter on January 23, 2007, stating that he needed to contact the Office of Student Conduct no later than February 6 and that a hold could be placed on his student account.

Plaintiff does not dispute any of Defendants' assertions regarding his meeting with Ms. Jimenez on December 11, 2006, the meeting scheduled for December 14, or Ms. Jimenez's letter asking him to contact her by February 6.

### III. Lawsuit and July 2007 Hearing

Plaintiff filed suit on May 21, 2007, alleging Defendants wrongfully placed a hold on his transcripts and notated his records with the allegations of wrongdoing. For this, Plaintiff asserted a federal section 1983 claim and state claims for breach of contract; negligence; negligent hiring, training, and supervision; intentional and negligent infliction of emotional distress; and injunctive and declaratory relief.

On June 8, 2007, Burns sent Plaintiff a letter informing him that a formal disciplinary hearing had been scheduled for July 9, the purpose of which was to address the First and Second Incidents. This hearing was scheduled nine months after the First Incident, seven months after the Second Incident, and six months after Plaintiff had left UNLV. After receiving notice of this meeting, Plaintiff amended his Complaint and added claims for retaliation and harassment. On September 10, 2007, Defendants moved to dismiss all claims except harassment, retaliation, and negligent hiring, training, and supervision. On December 18, 2007, the Court dismissed Plaintiff's section 1983 claim as it related to the First Incident and his state law claims for negligence and intentional infliction of emotional distress. The Court declined to dismiss Plaintiff's section 1983 claim as it related to the Second Incident and his breach of contract claim.

Defendants now move for summary judgment on Plaintiff's section 1983 claim regarding the Second Incident and on his remaining state claims. For the reasons discussed below, Defendants' Motion is granted.

AO 72
(Rev. 8/82)

# DISCUSSION

## I. Motion for Summary Judgment

A court will grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 249 (1986). In evaluating a motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

The movant bears the burden of showing that there are no genuine issues of material fact. *Id.* "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the movant satisfies the requirements of Rule 56, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

## II. 42 U.S.C. § 1983: Due Process

Because the Court dismissed Plaintiff's section 1983 claim based on the First Incident, Defendants' Motion for Summary Judgment on this claim pertains only to the Second

Incident. Plaintiff alleges Defendants placed a hold and disciplinary remarks on his transcript without providing him notice or an opportunity to be heard in violation of his substantive and procedural due process rights. The Court disagrees.

### A.  Procedural Due Process

Procedural due process requires both notice and an opportunity to be heard. *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). When a school disciplines a student for nonacademic reasons, the student "must be given some kind of notice and afforded some kind of hearing." *Goss*, 419 U.S. at 579. Due process does not require that the notice and hearing attendant to suspension of a college student resemble a "full-dress" civil or criminal trial. *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir. 1961). There are no hard and fast rules by which to measure meaningful notice. *Nash v. Auburn*, 812 F.2d 655, 660 (11th Cir. 1987). To determine the sort of notice and hearing to which a student is entitled, a court should balance the "student's interest in avoiding unfair or mistaken exclusion from the educational process against the school's interest in maintaining discipline." *Jaksa v. Regents of Univ. of Mich.*, 597 F. Supp. 1245, 1248 (E.D. Mich. 1984), *aff'd* 787 F.2d 590 (6th Cir. 1986) (citing *Goss*, 419 U.S. at 579–80). "In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it occurred." *Goss v. Lopez*, 419 U.S. 565, 582 (1975).

After reviewing the evidence in the light most favorable to Plaintiff, the Court finds that no genuine issue of material facts exists regarding whether Defendants provided Plaintiff with sufficient notice and an opportunity to be heard regarding the Second Incident. In coming to this conclusion, the Court is most persuaded by the undisputed evidence, admissions made by Plaintiff's counsel, and Plaintiff's failure to contest important factual assertions.

First, before charging Plaintiff with the alcohol-related infraction, Defendants notified him of the allegations and gave him the opportunity to discuss the possible charges. It is undisputed that on December 11, 2006, Nannette Jimenez, on behalf of the Office of Student Conduct, wrote a letter to Plaintiff describing the alleged Conduct Code violations and indicating

that a hold could be placed on his transcript.  This act put Plaintiff on notice regarding the charges that could be brought against him and the potential consequences.

      Not only does this letter prove that Plaintiff knew of the proceedings against him, but also Ms. Jimenez's testimony weighs in favor of finding that no due process violations occurred.  By affidavit, Jimenez testifies that on the same day she wrote to Plaintiff, she met with him and discussed the events of December 5, 2006.  The following day, the Office of Student Conduct contacted Plaintiff to let him know they received the police report and wanted to schedule a meeting for December 14.  Plaintiff failed to appear at this meeting.  Also, Ms. Jimenez testifies that on January 23, 2007, she sent Plaintiff a letter informing him that he missed the December 14, 2006, hearing and that he needed to contact her no later than February 6, 2007.  Ms. Jimenez again informed Plaintiff that a hold could be placed on his transcript until the issues were resolved.  Plaintiff never contacted Jimenez.  Importantly, Plaintiff does not dispute meeting with Jimenez, knowing of the December 14 meeting, and receiving the January 23, 2007, letter.

      In addition to failing to contest Defendants' evidence, Plaintiff's own actions indicate that he received both notice and an opportunity to be heard.  First, admissions by Plaintiff's counsel contradict Plaintiff's contention that his due process rights were violated.  On January 18, 2007, Plaintiff's attorney contacted the Office of Student Conduct to state that he was representing Plaintiff concerning the allegations surrounding the First and Second Incidents.  The fact that Plaintiff's attorney was aware of the alcohol violation discredits any argument by Plaintiff that he was not previously notified of the charge.  Second, after alleging in his Complaint that he never received notice of the proceedings against him, Plaintiff failed to appear at the formal hearing on July 9, 2007.  Although this hearing would not have cured any past constitutional violations, the hearing provided due process relating to the continuation of the academic hold on Plaintiff's transcripts.  As Plaintiff chose not to attend this hearing, any failure to be heard appears to be of his own making.

/

1    The evidence against Plaintiff is formidable.  Plaintiff received Ms. Jimenez's
2 December 11, 2006, letter indicating that charges could be brought against him.  He does not
3 contest Ms. Jimenez's testimony that she met with him and that she sent him a letter in January
4 indicating that he needed to contact her.  Also, Plaintiff's attorney knew of the charges stemming
5 from the Second Incident, and Plaintiff chose not to attend the formal hearing in July 2007.  Given
6 these facts, the Court finds, as a matter of law, that Plaintiff had notice and an opportunity to be
7 heard regarding the allegations arising out of the Second Incident. The Court therefore grants
8 Defendants' Motion for Summary Judgment on Plaintiff's section 1983, procedural due process
9 claim.

      **B.**    **Substantive Due Process**

11    Plaintiff also alleges Defendants violated his substantive due process rights.  In
12 neither his Amended Complaint nor his Opposition, however, does Plaintiff elaborate on exactly
13 how these rights were violated.  The Fourteenth Amendment confers substantive due process
14 rights, but these rights are limited to fundamental rights and liberty interests.  *Wash. v. Glucksberg*,
15 521 U.S. 702, 720–21 (1997); *see also Does v. Munoz*, 507 F.3d 961, 965 (6th Cir. 2007) (holding
16 that substantive due process protects only "certain fundamental rights and liberty interests").  As a
17 general rule, substantive due process does not apply to economic and property interests.  *Nunez v.*
18 *City of Los Angeles*, 147 F.3d 867, 871 n.4 (9th Cir. 1998).

19    Although Plaintiff has alleged a substantive due process violation, he does not point
20 to a specific fundamental right or liberty interest that has been compromised.  Moreover, after
21 reviewing the relevant case law, the Court is unable to find any authority for the proposition that
22 schools grades and transcripts are entitled to substantive due process protection.  Accordingly, the
23 Court grants Defendants' Motion for Summary Judgment on Plaintiff's substantive due process
24 claim.

25 /
26 /

AO 72
(Rev. 8/82)

### C. Qualified Immunity

Although the Court finds that summary judgment is appropriate as to all Defendants, it states for the record that the individual Defendants are also entitled to qualified immunity. State officials are entitled to qualified or "good faith" immunity from suits for money damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 815 (1982). Courts make this determination by examining (1) whether the facts alleged show that the official's conduct violated a constitutional right; and (2) if a constitutional violation can be found, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court has recently held that courts are not required to address these two questions in any particular order. "Courts should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. ___, 2009 WL 128768, 2009 U.S. LEXIS 591.

Because the Court finds that none of the Defendants violated Plaintiff's constitutional rights, its inquiry ends there. The individual Defendants—Mills, Burns, and Clark—are entitled to qualified immunity from Plaintiff's claims for money damages.

## III.   State Law Claims

### A. Breach of Contract Claim

Plaintiff alleges that the Conduct Code, the Nevada System of Higher Education ("NSHE") Handbook, and the UNLV Student Handbook create a contractual relationship obligating the University to follow its established procedures. Plaintiff alleges Defendants failed to comply with these established procedures when it sanctioned Plaintiff for the First and Second Incidents. Defendants move for summary judgment arguing (1) that no contract exists between the parties, and (2) even if a contract exists, Defendants did not act arbitrarily, capriciously, or in bad faith, as required under the law.

/

The Court does not delve into the unsettled case law regarding whether a contract between the parties was formed because it finds that Defendants did not act in an arbitrary, capricious, or bad faith manner in this case. A court's review under a breach of contract theory for violations of a university's established disciplinary procedures is limited to whether the procedures used were arbitrary, capricious, or in bad faith. *See Holert v. Univ. of Chicago*, 751 F. Supp. 1294, 1301 (N.D. Ill. 1990). A disciplinary committee's decision is arbitrary and capricious only if it is without any discernable rational basis. *Id.* Such a deferential standard is applied because of courts' "reluctance to interfere with the academic affairs and regulation of student conduct." *Id.* (citing *Tinkoff v. Nw. Univ.*, 77 N.E.2d 345, 349 (1st Dist. 1947)).

The Court is inclined to take a deferential review of a university's disciplinary procedures, as other courts have done. *See e.g.*, *Lyons v. Salve Regina College*, 565 F.2d 200, 202 (1st Cir. 1997) (because the student-university relationship is unique, contract law need not be rigidly applied) (citing *Slaughter v. Brigham Young Univ.*, 514 F.2d 622, 626 (10th Cir. 1975); *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988) ("absent evidence of a constitutionally impermissible basis for a challenged academic decision . . . courts and juries must be extremely reluctant to second guess the professional judgment of the academic decision makers . . . [o]nly when a challenged decision is arbitrary and capricious, and without rational basis, may it be set aside upon judicial review"); *Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 150 (D. Mass. 1997) ("courts should be slow to intrude into the sensitive area of the student-college relationship, especially in areas of curriculum and discipline.") (citation omitted)).

Reviewing the evidence in the light most favorable to Plaintiff, the Court finds that no genuine issue of material fact exists regarding whether the University acted in an arbitrary, capricious, or bad faith manner. The Court comes to this conclusion because Defendants gave Plaintiff multiple opportunities to present his version of events regarding the First and Second Incidents. As stated in the Court's Order (#31) addressing Defendants' Motion to Dismiss, the University afforded Plaintiff notice, an opportunity to be heard, and both an informal and formal

AO 72
(Rev. 8/82)

1  hearing before sanctioning him for the First Incident.  Regarding the Second Incident, it is
2  undisputed that Plaintiff either personally met with Jimenez or failed to take advantage of the
3  opportunity to do so.  Because the University followed its own policies and gave Plaintiff an
4  opportunity to be heard before it sanctioned him for the First and Second Incidents, the Court finds
5  Defendants did not act arbitrarily, capriciously, or in a bad faith manner.  Defendants' Motion for
6  Summary Judgment on Plaintiff's breach of contract claim is granted.

**B.     Negligent Hiring, Negligent Training, and Negligent Supervision**

In his Amended Complaint, Plaintiff alleges Defendants "hire[d] individuals with a propensity towards committing unlawful acts" and failed to "adequately train and supervise their agents, officers, and employees."  (Dkt . #15, Amend. Compl. ¶ 55.)  Plaintiff alleges these actions give rise to claims for negligent hiring, negligent training, and negligent supervision.  Defendants move for summary judgment, arguing that Plaintiff has failed to bring forth any factual evidence to supports his allegations.  The Court agrees with Defendants and grants summary judgment on all three claims.

**1.     Negligent hiring**

"The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position."  *Burnett v. C.B.A. Sec. Serv., Inc.*, 820 P.2d 750 (Nev. 1991).  An employer breaches this duty if he hires an employee when he knew or should have known of the employee's dangerous propensities.  *Hall v. SSF, Inc.*, 930 P.2d 94 (Nev. 1996).

Summary judgment is appropriate on this claim: Plaintiff has done nothing more than simply allege that Defendants hired employees with a "propensity towards committing unlawful acts."  He has made no factual allegations beyond this broad assertion, and he has brought forth no evidence to show that the University negligently hired the individual Defendants. All the evidence submitted on this matter relates solely to Plaintiff's claim for negligent training

/

AO 72
(Rev. 8/82)

1   and negligent supervision. Consequently, the Court grants summary judgment on Plaintiff's claim
2   for negligent hiring.

### 2.     Negligent training and negligent supervision

4   Negligent training and negligent supervision are similar claims. Under Nevada law,
5   employers have a duty to properly train and supervise their employees. *Jespersen v. Harrah's*
6   *Operating Co.*, 280 F. Supp. 2d 1189, 1194–95 (D. Nev. 2002). Negligent training and negligent
7   supervision claims most often arise when an employee harms a third party and the injury would
8   not have occurred had the employer exercised reasonable care. *See Vinci v. Las Vegas Sands, Inc.*,
9   984 P.2d 750, 751 (Nev. 199). Negligent training has been characterized as the failure to use due
10  care in giving directions or the failure to anticipate circumstances that are likely to arise. *Lane v.*
11  *Cent. Bank of Ala.*, 425 So.2d 1098, 1100 (Ala. 1983); Restatement (Second) of Agency § 213.
12  Negligent supervision occurs when an employer fails to anticipate foreseeable employee
13  misconduct or fails to take reasonable precautions to protect third parties. *M.L. Magnuson*, 531
14  N.W.2d 849, 856 n.3 (Minn. Ct. App. 1995); Restatement (Second) of Agency § 213.

15  In his Opposition, Plaintiff alleges Defendants are liable for negligent training and
16  negligent supervision because the University instructed the individual Defendants (1) to hold a
17  formal hearing even though more than 90 days had passed since formal charges were brought and
18  (2) to deny Plaintiff the right to an attorney at the formal hearing. Defendants argue they cannot be
19  liable for either tort because Plaintiff did not suffer any harm based on Defendants' actions. The
20  Court agrees with Defendants.

21  First, the Court is not persuaded that Defendants acted negligently in training or
22  supervising its employees when it called and held a formal hearing on July 9, 2007. Although the
23  University requires that formal hearings be held within 90 days from the date charges against a
24  student are brought, this rule can be waived in "compelling circumstances." (Dkt. #51, Mot. for
25  Summ. J. Ex. C.) Defendants have consistently asserted that Plaintiff's lawsuit alleging he was
26  never given notice or an opportunity to be heard constituted a compelling circumstance that

12

justified calling a formal hearing several months after the charges were originally brought. The Court finds no negligence on the part of the University in coming to this conclusion and instructing its employees to act accordingly. More important, even if the University acted inappropriately in calling the hearing, the fact remains that Plaintiff was given sufficient notice and an opportunity to be heard—prior to filing the lawsuit—regarding both the First and Second Incidents. In light of these facts, the Court concludes that the University's decision to call an additional hearing does not amount to negligent supervision or negligent hiring.

The Court is also unpersuaded by Plaintiff's claim that the University negligently trained and supervised its employees by instructing them that Plaintiff's counsel was not to be permitted to speak at the formal hearing. Under the UNLV Student Conduct Code, Plaintiff had no right to have counsel speak at the formal hearing:

> The complainant and the charged student have the right to be assisted by any advisor they choose, at their own expense. The advisor may be an attorney. The complainant and the charged student are responsible for presenting their own witnesses and other evidence. Advisors are not permitted to speak on behalf of either the complainant or the charged student.

(Dkt. # 51, Mot for Summ. J. Ex. C.) Despite this language, Plaintiff argues that, under the University's policies, his attorney should have been given the opportunity to speak at the hearing. To support this assertion, Plaintiff cites to NSHE Code, Section 6.9.6(a). The provision, however, states that University employees may have an attorney speak on their behalf in employee disciplinary proceedings: it does not apply to student disciplinary procedures. In conclusion, because Defendants followed their own internal procedures and gave Plaintiff multiple opportunities to heard—even before the formal hearing—the Court finds, as a matter of law, that the University did not negligently supervise or train its employees. Summary judgment is granted on these claims.

### C. Retaliation and Harassment

Plaintiff alleges that Defendants called the July 9, 2007, hearing in order to harass him and retaliate against him for bringing this lawsuit. The Court finds no factual basis for either

one of these claims. Instead of producing evidence of retaliation or harassment, Plaintiff relies solely on his bold, unsubstantiated assertion that Defendants called the hearing for vindictive purposes. Considering that Plaintiff claims he never received notice or an opportunity to be heard regarding the disciplinary actions taken against him, Defendants' decision to call an additional hearing is not alone evidence of an improper motive. Because Plaintiff has failed to produce any other evidence of retaliation or harassment, the Court grants Defendants' Motion for Summary Judgment on both of these claims.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#51) is GRANTED in its entirety.

The Clerk of the Court is directed to close this case.

Dated: April 8, 2009.

_____
ROGER L. HUNT
Chief United States District Judge